UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------X

UNITED STATES SECURITIES AND EXCHANGE
COMMISSION,

                     Plaintiff,

    -against-

RICHARD D. POWER,

                     Defendant.

----------------------------------------X

06 Civ. 15343

OPINION

A P P E A R A N C E S:

        Attorneys for Plaintiff

        U.S. SECURITIES AND EXCHANGE COMMISSION
        100 F Street, N.E.
        Washington, D.C. 20549-4030
        By:  Arthur S. Lowry, Esq.
             Grayson D. Stratton, Esq.

        Attorneys for Defendant

        DICKSTEIN SHAPIRO LLP
        1177 Avenue of the Americas
        New York, NY 10036
        By:  Daniel J. Horwitz, Esq.
             Christopher T. Leonardo, Esq.

1

**Sweet, D.J.**

Defendant Richard D. Power ("Power" or the "Defendant") has moved under Rule 12(b)(6), Fed. R. Civ. P., to dismiss the complaint filed against him by the Securities and Exchange Commission ("SEC"). For the reasons set forth below, the motion is denied.

## Facts

The SEC filed its complaint on December 21, 2006, alleging five causes of action against Power, a former officer of Tyco International Ltd. ("Tyco"): 1) violation of Securities Act of 1933 ("Securities Act") § 17a, 15 U.S.C. § 77q(a) (fraud in the offer or sale of securities) ; 2) violation of Exchange Act of 1934 ("Exchange Act") § 10(b), 15 U.S.C. § 78j(b), and Rule 10b-5, 17 C.F.R. § 240.10b-5 (fraud in connection with the purchase or sale of securities); 3) aiding and abetting a violation of § 10(b) and Rule 10b-5; 4) aiding and abetting violations of Exchange Act § 13(a), 15 U.S.C. § 78m(a), and Rules 12b-20, 13a-1, and 13a-13, 17 C.F.R. §§ 240.12b-20, 240.13a-1, and 240.13a-13 (reporting violations); and 5) violations of Exchange Act Rule 13b2-1, 17 C.F.R. §240.13b2-1, and aiding and abetting violations of Exchange Act § 13(b)(2)(A), 15 U.S.C. §78m(b)(2)(A) (books and records violations).

2

According to the Complaint, in July 1997, Tyco merged with ADT, a security monitoring company, which it operated under its Fire & Security Services Division, where Power was employed as a Vice President. Compl. ¶¶ 17-18. Immediately following the ADT merger, Power created a dealer connection fee ("DCF") as an accounting device to adjust Tyco's purchase of security monitoring contracts from independent dealers, which generated lower reported earnings than did its direct sales of monitoring contracts. Compl. ¶ 18. The Complaint alleges that Power accomplished this by inventing what the Commission terms the "DCF Sham Transaction," which consisted of two equal and offsetting "payments" that were inserted into each security monitoring contract Tyco purchased from an independent dealer. Compl. ¶ 19. No cash changed hands as part of the transaction. Compl. ¶ 20. While the equal and offsetting "payments" had no effect on the economic reality of substance of the existing, recurring transactions between Tyco and its dealers, Power designed the transaction to have a specific and false accounting effect. Although Tyco recognized the payment it received from the dealer as income immediately, the offsetting payment from Tyco to the dealer was amortized over ten years. Compl. ¶¶ 20-21. According to the Complaint, the DCF Sham Transaction was inserted into every security monitoring contract Tyco purchased through 2002. Compl. ¶ 24.

3

The Complaint also alleges Power's participation in fraudulent acquisition accounting. The Complaint alleges that Power was responsible for acquisition accounting in Tyco's acquisition of Carlisle in 1996, where Carlisle management, at Tyco's request, made entries that reduced its assets and increased its liabilities by $26.4 million, adjustments that Power referred to as "financial engineering." Compl. ¶ 35.

The Complaint alleges Power proposed the write off of $72 million in assets in use during the Holmes acquisition in 1998. While Tyco did not completely write off these assets, it substantially undervalued the assets at salvage value, effectively adopting Power's undervaluation method to inflate Tyco's reported income improperly by reducing its depreciation expenses. Compl. ¶ 36.

The Complaint also alleges that Power, together with defendant Edward Federman ("Federman")[1], oversaw the accounting decisions for Tyco's 1999 Raychem acquisition, endeavored to improperly inflate Raychem's reserve accounts, directed that its acquired inventory be undervalued, and urged that Raychem's post-merger expenses be concealed in a "stub" period, in order to give

---

[1]Federman was terminated as a defendant in this case on April 30, 2007.

the illusion of larger profits for Tyco after the acquisition.
Compl. ¶¶ 38-40.

Finally, the Complaint alleges that Power, together
with Federman, directed the entry of multiple improper pre-merger
adjustments during Tyco's 1999 acquisition of U.S. Surgical.
Compl. ¶ 41.

The motion of Power to dismiss the complaint was heard
on April 11, 2007.

## The Applicable Standard

For the purposes of a motion to dismiss, all factual
allegations are accepted as true, and all inferences are drawn in
favor of the pleader. Mills v. Polar Molecular Corp., 12 F.3d
1170, 1174 (2d Cir. 1993). The Court may also consider any
documents attached to the complaint or incorporated by reference
into the complaint.[2] Paulemon v. Tobin, 30 F.3d 307, 308-09 (2d
Cir. 1994) (citation omitted). On a motion to dismiss, the
complaint is properly deemed to include "any statements or
documents it incorporates by reference, public disclosures filed

---

[2]The Declaration of Daniel J. Horwitz, submitted with Power's motion to
dismiss, attaches several exhibits, primarily news reports. Except where
otherwise noted below, they are not documents attached to or referenced in the
Commission's complaint, and consequently have not been considered.

5

by law with the Commission, and, documents the plaintiff either possessed or knew about and upon which the plaintiff relied in bringing suit." Harrison v. Rubenstein, No. 02 Civ. 9356 (DAB), 2007 WL 582955 at *10 (S.D.N.Y. Feb. 26, 2007) (citing Rothman v. Gregor, 200 F.3d 81, 88-89 (2d Cir. 2000)).

At issue in a Rule 12(b)(6) motion "is not whether a [claimant] will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Villager Pond, Inc. v. Town of Darien, 56 F.3d 375, 378 (2d Cir. 1995) (quoting Scheuer v. Rhodes, 416 U.S. 232, 235-36 (1974)). "Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." Roth v. Jennings, 489 F.3d 499, 510 (2d Cir. 2007) (citing Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1969 (2007)).

Courts, however, are "not bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986). Rather, it is well understood that "conclusions of law or unwarranted deductions of fact are not admitted" for the purposes of stating a claim. Lentell v. Merrill Lynch & Co., Inc., 396 F.3d 161, 174-75 (2d Cir. 2005), cert. denied, 126 S. Ct. 421 (2005) (citation omitted).

6

## The Complaint Adequately Alleges its Causes of Action

The Complaint's first two Claims allege that Power violated Securities Act Section 17(a) and Exchange Act Section 10(b) and Rule 10b-5. The Third and Fourth Claims allege that Power aided and abetted Tyco's violations of Section 10(b) and Rule 10b-5, as well as Exchange Act Section 13(a) and Exchange Act Rules 12b-20, 13a-1, and 13a-13. The Fifth Claim alleges that Power violated Exchange Act Rule 13b2-1 and aided and abetted violations of Exchange Act Section 13(b)(2)(A).

### i. *Securities Act Section 17(a) and Exchange Act Section 10(b) and Rule 10b-5 Claims*

The Complaint states claims against Power based on all three subsections of Section 17(a), and all three subsections of Rule 10b-5. Compl. ¶¶ 59, 62. Section 17(a), 15 U.S.C. § 77q(a), is a general prohibition against fraud in the offer or sale of securities, using the mails or the instruments of interstate commerce. Section 17(a)(1) forbids the direct or indirect use of any device, scheme, or artifice to defraud; Section 17(a)(2) makes it unlawful to obtain money or property through misstatements or omissions about material facts; and Section 17(a)(3) proscribes any transaction or course of business

7

that operates as a fraud or deceit upon a securities buyer. SEC
v. Softpoint, Inc., 958 F. Supp. 846, 861 (S.D.N.Y. 1997), aff'd,
159 F.3d 1348 (2d Cir. 1998). Section 10(b), and Rule 10b-5
promulgated thereunder, prohibit similar conduct in connection
with the purchase or sale of a security. 15 U.S.C. § 78j(b); 17
C.F.R. § 240.10b-5.

In general, to prove a claim under these provisions,
the SEC must show that the defendant: (1) committed a deceptive
or manipulative act, or made a material misrepresentation (or a
material omission if the defendant had a duty to speak) or used a
fraudulent device; (2) with scienter; (3) which affected the
market for securities or was otherwise in connection with their
offer, sale or purchase. See SEC v. Monarch Funding Corp., 192
F.3d 295, 308 (2d Cir. 1999), SEC v. First Jersey Sec., Inc., 101
F.3d 1450, 1467 (2d Cir. 1996). While proof of scienter is a
necessary element of liability under Securities Act § 17(a)(1)
and Exchange Act § 10(b) and Rule 10b-5, it is not required for
liability under §§ 17(a)(2) and 17(a)(3). See Aaron v. SEC, 446
U.S. 680, 697 (1980).

A public company and its management may violate these
provisions by making a material misstatement in, or omitting
requisite material information from, a periodic report,

8

registration statement, or other filing with the Commission.  See
Softpoint, 958 F. Supp. at 862-63.  The use of deceptive devices
and fraudulent practices also violate these provisions.  See In
re Parmalat Sec. Litig., 376 F. Supp. 2d 472, 504 (S.D.N.Y. 2005)
(factoring and securitization of worthless invoices were
deceptive devices and constituted acts, practices or courses of
conduct violative of Section 10(b) and Rule 10b-5).

     Power has contended that the Complaint fails to allege
that he violated these antifraud provisions because it fails to
allege facts supporting scienter or his involvement in the DCF
Sham Transaction, other than his asserted role in which he
"simply came up with the idea of a dealer connection fee."
Def.'s Mem. Supp. 16.  Power also asserts that the Complaint
fails to allege his personal participation in fraudulent conduct,
or that he made or caused any false and misleading statements in
Tyco's public filings.  Def.'s Mem. Supp. 18-22.

     Primary liability for a company's false statements is
proper where "the SEC is able to show that the defendant was
sufficiently responsible for the statement--in effect caused the
statement to be made--and knew or had reason to know that the
statement would be disseminated to investors."  SEC v. KPMG LLP.,
412 F. Supp. 2d 349, 375-76 (S.D.N.Y. 2006) (denying summary

9

judgment to audit engagement partners, finding their
responsibility "in forming the audit opinion" that constituted
the misstatements at issue was sufficient basis for primary
liability). Here the allegations include that: as a result of
the fraudulent DCF Sham Transaction that Power devised, Tyco
periodic reports--specifically including Tyco's Form 10-K for its
fiscal year 2001, Form S-4 filed January 8, 2002, and Form 10-Q
for Tyco's second fiscal quarter of 2002--contained false and
misleading statements, Compl. ¶ 29; due to the improper Carlisle
entries Power was responsible for, Tyco's post-acquisition
earnings were overstated in reports filed with the Commission,
Compl. ¶ 35; due to improperly undervalued assets at Holmes,
Tyco's Forms 10-K for 1998 through 2002 overstated operating
income by more than $70 million, Compl. ¶ 36; improper Raychem
entries due to Power resulted in misstatements on Tyco's Forms
10-K for 1999 and 2000, Compl. ¶ 39; various filings made with
the Commission between 1997 and 2002 were false and misleading as
a result of the DCF Sham Transaction and the improper acquisition
accounting, Compl. ¶ 56.


        Power has cited Mills v. Polar Molecular Corp., 12 F.3d
170 (2d Cir. 1993), and SEC v. Cedric Kushner Promotions, Inc.,
417 F. Supp. 2d 325 (S.D.N.Y. 2006), to support his argument that
he cannot be held primarily liable for misstatements here. Mills

10

turned on the failure to allege any facts indicating that the
defendants "personally knew of, or participated in, the fraud."
Mills, 12 F.3d at 1175. Kushner, which was decided on summary
judgment, turned on the failure to adduce, after discovery,
evidence that the defendants was "centrally involved in the
planning and execution of the fraudulent schemes." Kushner, 417
F. Supp. 2d at 333-34. The Complaint here alleges that Power was
the architect of the DCF Sham Transaction and oversaw and
directed the fraudulent acquisition accounting in the Carlisle,
Holmes, Raychem, and U.S. Surgical acquisitions.


     Power has contended that Federman bears greater
responsibility for DCF Sham Transaction, because he "intervened
and altered" Power's idea in 1998, Def.'s Mem. Supp. 17, and only
after that point did the transaction affect Tyco's income.
Def.'s Mem. Supp. 5. However, the Complaint alleges that Power
created the DCF Sham Transaction in the summer of 1997, Compl. ¶¶
17, 18; in accordance with Power's design, every time Tyco
acquired a security monitoring contract from its network of
independent alarm dealers, it paid a purported $200 "growth
bonus" to the dealer, and, at the same time, the dealer
purportedly paid a $200 "dealer connection fee" to Tyco, Compl.
¶¶ 18-19, 28; Power designed the transaction to have specific,
false accounting effect, Compl. ¶ 18; as a result of the

11

transaction, and Power's accounting treatment for the
transaction, Tyco recognized immediate, improper income in its
financial statements filed with the SEC beginning with its
quarterly report on Form 10-Q for the period ending December 31,
1997, Compl. ¶¶ 21, 28, 29; the DCF Sham Transaction remained in
place and unchanged from Power's initial design for at least two
fiscal quarters before Federman made purely cosmetic changes to
the transaction, leaving Power's fraudulent device intact, Compl.
¶¶ 18, 22, 24. These allegations are sufficient to plead Power's
active involvement.

With regard to the showing of scienter required to
proceed on the Section 17(a)(1), Section 10(b), and Rule 10b-5
claims, in the Second Circuit, the pleading standard for scienter
is satisfied "'(a) by alleging facts to show that defendants had
both motive and opportunity to commit fraud, or (b) by alleging
facts that constitute strong circumstantial evidence of conscious
misbehavior or recklessness.'" Ganino v. Citizens Utilities Co.,
228 F.3d 154, 168-69 (2d Cir. 2000) (quoting Shields v. Citytrust
Bancorp, Inc., 25 F.3d 1124, 1128 (2d Cir. 1994)).

The Complaint alleges scienter directly (e.g., Compl.
¶¶ 60, 63) and circumstantially from facts such as Power's
background and training, his responsibilities at Tyco, and the

12

sheer audacity of his "adjustments" to the balance sheets of acquired companies designed to improperly inflate Tyco's reported financial results. The allegations include that Power was a former accountant with PricewaterhouseCoopers ("PwC") for eight years before coming to Tyco, Compl. ¶ 13; was involved in Tyco's financial reporting, Compl. ¶ 2; was at one point Tyco's Chief Financial Officer, Compl. ¶ 13; exchanged accounting literature with his co-defendant Federman which indicated that Tyco's accounting for the DCF Sham Transaction was improper, Compl. ¶ 23; knew or was reckless in not knowing that the DCF Sham Transaction was improper and that his conduct substantially assisted Tyco's filing of false reports with the Commission, Compl. ¶ 31; referred to Carlisle's balance sheet adjustments as "financial engineering" with reserves "potentially in excess of actual exposure," Compl. ¶ 35; proposed a complete write off of $72 million in assets at Holmes that were still in use, Compl. ¶ 36; attempted to inflate Raychem's reserve accounts improperly, directed the understatement of its inventory, and proposed the use of Raychem's "stub" period to conceal Tyco's post-merger expenses from public disclosure, Compl. ¶¶ 38-40; directed U.S. Surgical to make multiple improper pre-merger adjustments to enhance Tyco's reported post-acquisition operating income, including the establishment of improper reserves--for which Power took credit---as a device to help Tyco meet its post-merger

13

financial targets, Compl. ¶ 41; knowingly and recklessly falsely
enhanced and overstated Tyco's reported operating income, Compl.
¶ 42; and knew, was reckless in not knowing, or should have known
that Tyco's filings contained material misstatements and
omissions, Compl. ¶ 60, 63. These allegations suffice to
adequately allege Power's violation of Section 17(a), Section
10(b) and Rule 10b-5.

The Complaint also alleges that defendants Power and
Federman engaged in fraudulent conduct "singly or in concert."
Compl. ¶ 12. The fact that others may have participated in this
conduct, or that Power had an accomplice, does not absolve Power
at the pleading stage.

To the extent that Power postulates that the facts
developed in discovery will show that the conduct of others
somehow "intervened" and cut off his liability for the fraud, it
is inconsistent with the Complaint's allegations detailing Power's
direct and substantial involvement in the fraudulent conduct, and
is therefore insufficient to prevail on a motion to dismiss.

### ii. *Section 10(b) and Rule 10b-5 Aiding and Abetting Claims*

The Complaint's Third Claim alleges that Power aided

14

and abetted Tyco's violations of Exchange Act Section 10(b) and
Rule 10b-5. Three elements must be proved at trial in order to
prevail on this claim: (1) Tyco committed at least one violation
of Section 10(b) and Rule 10b-5 ("primary violation"); (2) Power
knew or was reckless in not knowing of the primary violation; and
(3) Power substantially assisted in the primary violation.  See
SEC v. Treadway, 430 F. Supp. 2d 293, 336, 339 (S.D.N.Y. 2006);
SEC v. Lybrand, 200 F. Supp. 2d 384, 400 (S.D.N.Y. 2002), aff'd
on other grounds, 423 F.3d 143 (2d Cir. 2005).  There must be a
showing of actual intent to defraud when the defendant does not
owe a fiduciary duty to the defrauded parties.  See SEC v. Jones,
No. 05 Civ. 7044 (RCC), 2006 WL 1084276, at *7 (S.D.N.Y. April
25, 2006) (citing Ross v. Bolton, 904 F.2d 819, 824 (2d Cir.
1990)).

        Power maintains that the Complaint fails to establish
that he was the "proximate cause" of Tyco's violations, and,
therefore, that he "substantially assisted" in the primary
violation.  Def.'s Mem. Supp. 23.  See Treadway, 430 F. Supp. 2d
at 339 ("The aider and abettor's substantial assistance must be a
proximate cause of the primary violation.").  While "mere
awareness and approval of the primary violation is insufficient
to make out a claim for substantial assistance," Id. (citation
omitted), here, the allegations exceed mere inaction.  As

15

outlined supra, the Commission alleges Power's knowledge of and
active involvement in the perpetration of Tyco's primary
violations. See, e.g., Treadway, 430 F. Supp. 2d at 340 (denying
summary judgment on aiding and abetting claims where Commission's
allegations regarding defendants' knowledge of and involvement in
violations were in dispute); Block v. First Blood Assocs., 663 F.
Supp. 50, 51 (S.D.N.Y. 1987) (denying motion to dismiss complaint
alleging that defendants substantially participated in and/or
aided and abetted securities fraud by, inter alia, structuring a
sham transaction involving a fictitious sale of the rights to a
motion picture).

Finally, a claim under Section 10(b) sounds in fraud
and must therefore meet the pleading requirements of Rule 9(b),
Fed. R. Civ. P. See, e.g., In re Scholastic Corp. Sec. Litig.,
252 F.3d 63, 69-70 (2d Cir. 2001). Rule 9(b) provides that "[i]n
all averments of fraud or mistake, the circumstances constituting
fraud or mistake shall be stated with particularity. Malice,
intent, knowledge, and other condition of mind of a person may be
averred generally." Fed. R. Civ. P. 9(b). The Second Circuit
"has read Rule 9(b) to require that a complaint [alleging fraud]
'(1) specify the statements that the plaintiff contends were
fraudulent, (2) identify the speaker, (3) state where and when
the statements were made, and (4) explain why the statements were

fraudulent.'" Rombach v. Chang, 355 F.3d 164, 170 (2d Cir. 2004) (quoting Mills, 12 F.3d at 1175). However, the rule is not intended to be "an insurmountable hurdle for [claimants] to overcome, but was designed to afford defendants fair notice of the fraud alleged against them." Lehman Bros. Commercial Corp. v. Minmetals Int'l, No. 94 Civ. 83091 (JFK), 1995 WL 608323, at *3 (S.D.N.Y. Oct. 16, 1995) (internal quotation marks and citation omitted)(denying motion to dismiss); see also Ross v. Bolton, 904 F.2d at 823 ("The primary purpose of Rule 9(b) is to afford defendant fair notice of the plaintiff's claim and the factual ground upon which it is based"); In re Scholastic Corp. Sec. Litig., 252 F.3d at 72 ("[W]e do not require the pleading of detailed evidentiary matter in securities litigation.").

The Complaint alleges Power's wrongful action, Compl. ¶¶ 18-21 (noting his creation of a transaction that lacked economic substance and that was designed to inflate Tyco's income); facts indicating Power's fraudulent intent, Compl. ¶¶ 4, 21, 23, 31 (pointing out that, pursuant to Power's intent and design, illusory payments from dealers were treated as income and illusory payments to dealers were treated as capital expenses, as well as that Power possessed accounting literature that indicated the accounting treatment afforded the transaction was improper);

17

and the fraudulent misstatements caused by Power's introduction of the DCF Sham Transaction, Compl. ¶¶ 28-29 (alleging that, as a result of the DCF Sham Transaction, Tyco's operating income and cash flow were overstated by $567 million and $719 million, respectively, from Tyco's fiscal year ended September 30, 1998, through its fiscal quarter ended December 31, 2002).

Power contends that the decision in Kushner supports his contention that since he was not responsible for Tyco's continued use of his device, he cannot be held to have made any misleading statements in Tyco's public filings. There, the district court dismissed a claim for primary liability under Section 10(b) of the Exchange Act against an individual who directly assisted in the preparation of a periodic filing that included a forged audit report (among other misstatements), but who was not "alleged to have been centrally involved in the planning and execution of the fraudulent scheme[]." Kushner, 417 F. Supp. 2d at 333-34. Here, Power is alleged to have created the transaction that was directly responsible for Tyco's fraudulent misstatements for a period of five years, and to have intended and known that the sham transaction would falsely inflate Tyco's reported income and cash flow. See Compl. ¶¶ 13, 18-21, 28-29, 31. Accordingly, the Complaint sufficiently alleges Power's responsibility for the misstatements.

18

### *iii. Exchange Act Section 13(a) and Rule 12b-20, 13a-1, and 13a-3 Claims*

Power asserts that the Commission's Fourth and Fifth Claims against him for violating Exchange Act Rule 13b2-1 and aiding and abetting Tyco's violations of Exchange Act Sections 13(a) and 13(b)(2)(A) and Rules 12b-20, 13a-1, and 13a-13 fail because they "similarly require the Commission to show that Power acted with fraudulent intent and provided substantial assistance that resulted in primary violations." Def.'s Mem. Supp. 25.

While the Commission asserts that that the heightened pleading standard of Rule 9(b) does not apply to these claims because they are not fraud claims, Pl.'s Mem. Opp. 13, the Second Circuit has held that the application of Rule 9(b) "is not limited to allegations styled or denominated as fraud or expressed in terms of the constituent elements of a fraud cause of action." Rombach, 355 F.3d at 171. In Rombach, the Second Circuit held that the heightened pleading requirements of Rule 9(b) apply to claims under Exchange Act Section 11 and Section 12(a)(2), despite the fact that "fraud is not an element or a requisite to a claim" under those sections, because the particular claims in the case before the court were predicated on fraud. Here, the Commission's Fourth and Fifth

Claims are predicated on the same alleged fraud as the
Commission's First, Second, and Third Claims.

Despite the application of Rule 9(b) to the Fourth and
Fifth Claims, for the same reasons articulated above with respect
to the Commission's primary and aiding and abetting claims under
Section 10(b) and Rule 10b-5, the Fourth and Fifth claims are
adequately supported by the allegations contained in the
Complaint to survive a motion to dismiss.

**Statute of Limitations**

Section 2462 of Title 28 provides that "an action, suit
or proceeding for the enforcement of any civil fine, penalty, or
forfeiture, pecuniary or otherwise, shall not be entertained
unless commenced within five years from the date when the claim
first accrued." 28 U.S.C. § 2462. The Commission filed suit in
December 2006, but its claims seek to punish conduct that
occurred at the latest in 1999. Power contends that the civil
penalty claims are barred by the statute of limitations, citing
SEC v. Jones, 476 F. Supp. 2d 374 (S.D.N.Y. 2007) ("Jones II").
Def.'s Mem. Supp. 9-14.

### i. *Fraudulent Concealment Doctrine*

Although Power relies on the summary judgment decision
in Jones II, Jones II is largely inapposite here because it was
decided on a motion for summary judgment, following discovery.
Thus, unlike the question facing that court--whether sufficient
facts had been adduced at the end of discovery to warrant the
requested relief--the question here is instead whether the
Complaint's allegations, if true, would support the relief the
Commission seeks.

The SEC relies on the Jones court's earlier decision
denying a motion to dismiss the Commission's injunctive action on
statute of limitations grounds, SEC v. Jones, No. 05 Civ. 7044
(RCC), 2006 WL 1084276 (S.D.N.Y. April 25, 2006) ("Jones I").
Jones I involved allegations that an investment adviser violated
the Investment Advisers Act of 1940 ("Advisers Act") by failing
to tell the board of directors of the mutual funds managed by the
investment adviser about additional revenue agreements it had
obtained from its transfer agent. The defendants in Jones I
moved to dismiss the Commission's complaint, in part on statute
of limitations grounds. In denying the motion, the court noted
that the five-year statute of limitations on penalties and fines
set out in Section 2462 could be tolled by the fraudulent

concealment doctrine, as the Commission's complaint had meet the relevant standard at the pleading stage. Jones I, 2006 WL 1084276, at *6. See generally Holmberg v. Armbrecht, 327 U.S. 392, 397 (1946) (requiring the fraudulent concealment doctrine to be "read into every federal statute").

The fraudulent concealment doctrine operates to toll the statute if the plaintiff alleges: (1) that the defendants concealed the cause of action; (2) that the plaintiff did not discover the cause of action until some point within five years of commencing the action; and (3) that the plaintiff's continuing ignorance was not attributable to lack of diligence on its part. Jones I, 2006 WL 1084276, at *6 (citing New York v. Hendrickson Bros., Inc., 840 F.2d 1065, 1083 (2d Cir. 1988)).

In Jones I, applying the fraudulent concealment doctrine, the Honorable Richard C. Casey determined in connection with a motion to dismiss that the defendant's failure to inform the mutual funds' board of directors of the additional revenue was "inherently self-concealing," and observed that the SEC had properly alleged both that it did not discover the fraud until some time within the statute of limitations and that its failure to discover the fraud sooner was not due to lack of diligence. Jones I, 2006 WL 1084276, at *6.

22

Here, at to the first and second elements required to establish fraudulent concealment, the Commission has alleged in its Complaint that as a result of defendants' conduct concealing the DCF Sham Transaction, and the Transaction's inherently self-concealing nature, that the Commission did not learn of the fraud until late 2003 (and therefore within the statute of limitations). Compl. ¶ 57. It is alleged that the transaction was explicitly designed by Power to fraudulently conceal the fact that it had no economic substance. Compl. ¶¶ 3-4. Cf. Hendrickson, 840 F.2d at 1083 (holding that "the passing off of a sham article as one that is genuine is an inherently self-concealing fraud" and sufficient to toll the statute of limitations).

According to Power, the SEC has failed to meet its burden of pleading fraudulent concealment. As in Jones II, the Commission here fails to allege that Power took any affirmative steps to conceal any fraud. Jones II, 476 F. Supp. at 382. However, as the Court stated in Jones I:

> Plaintiff can establish the concealment element by pleading "either that the [Defendants] took affirmative steps to prevent [discovery of the fraud] or that the wrong itself was . . . self-concealing." Normally, "a plaintiff seeking to toll the applicable statute of limitations due to fraudulent concealment . . . must meet the particularity standard of Rule 9(b)." In re Natural Gas Commodity Litig., 337 F. Supp. 2d 498, 513-14

(S.D.N.Y. 2004). "When an alleged violation
is inherently self-concealing, [however], an
assertion of such a scheme is sufficient and a
plaintiff need not plead any affirmative
actions by a defendant." Id. at 514.

See also In re Nine West Shoes Antitrust Litig., 80 F. Supp. 2d
181, 193 (S.D.N.Y. 2000)).

Power also contends that the cause of action in this
case could not have been fraudulently concealed because the DCF
Sham Transaction and the improper accounting were disclosed to
and vetted by PwC, Tyco's independent accountant at the time.
The Complaint alleges that PwC raised the issue of the DCF Sham
Transaction independently in the course of its review of Tyco's
financial statements for the fiscal quarter ended March 30, 1998,
Compl. ¶ 22, and that the defendants did not acknowledge the sham
nature of the transaction to PwC, but instead defended it, and
repackaged the transaction to better conceal its fraudulent
nature. Compl. ¶ 24. The PwC allegations do not vitiate the
fraudulent concealment allegation.

Power contends that the Commission has not adequately
pled the third element that it must establish in order to rely
upon the fraudulent concealment doctrine, namely that its
ignorance of the actions underlying the complaint until late 2003
was not attributable to a lack of diligence on the Commission's

24

part. Def.'s Mem. Supp. 11.

According to Power, the SEC started actively investigating Tyco's acquisition accounting in as early as 1999. Power relies, in part, on a Form 8-K that Tyco filed with the SEC in December 2002. In the 8-K, Tyco states, "In 1999 and 2000, the SEC conducted a Matter Under Inquiry . . . concerning the Company's acquisition accounting." (Horwitz Decl. Tyco Form 8K Ex. C). Power urges this Court to take judicial notice of this filing to the extent that it advances his argument that the Commission was on notice of Power's role in the improper acquisition accounting earlier than 2002.

The Commission, citing Cosmas v. Hassett, 886 F.2d 8 (2d Cir. 1989), contends that this Court cannot consider SEC filings that were neither attached to nor incorporated by reference in the complaint. However, subsequent to Cosmas, "[t]he Second Circuit . . . made clear that consideration of documents publicly filed by defendants in securities cases is not foreclosed to district courts in deciding motions to dismiss." In re Gen. Dev. Corp. Bond Litig., 800 F.Supp. 1128, 1135-36 (S.D.N.Y. 1992) (citing Kramer v. Time Warner, Inc., 937 F.2d 767, 774 (2d Cir. 1991)).

25

Furthermore, the Complaint alleges violations in connection with Tyco's SEC filings, including periodic reports on Forms 10-Q for its fiscal year ended September 30, 1997, through its fiscal quarter ended December 31, 2002. One of those 10-Q Forms, filed on February 11, 2000, includes explicit reference to an ongoing Commission "inquiry relating to charges and reserves taken by Tyco in connection with the Company's acquisitions." While this form has not been submitted to the Court by either party, the Court is permitted to take judicial notice whether requested or not. Fed. R. Evid. 201(c). The Form 10-Q establishes that there is a dispute as to whether the Commission's failure to discover the actions underlying the Complaint earlier was attributable to a lack of diligence.

However, the Complaint alleges affirmative acts by defendant Federman to conceal the transaction's lack of economic substance and to prevent discovery of its fraudulent purpose and effect. Compl. ¶ 24. Federman's concealment is attributable to Power for purposes of the doctrine of fraudulent concealment. Hendrickson, 840 F.2d at 1083-85 (statute of limitations tolled by fraudulent concealment both because the fraud was self-concealing and because the evidence of affirmative acts of concealment committed by some defendants was properly admitted against all defendants). At the pleading stage, this allegation

suffices to satisfy the diligence requirement.

### ii. *Penalty Claims*

In addition to seeking civil monetary penalties, the
Commission seeks Power's disgorgement of "ill-gotten gains," as
well as a permanent injunction restraining Power from violating
federal securities laws. The primary consideration when
determining whether a claim seeks a "penalty" to which Section
2462 applies is whether the remedy at issue is "punitive" or
"remedial" in nature. See Johnson v. S.E.C., 87 F.3d 484, 487-88
(D.C. Cir. 1996); SEC v. Schiffer, No. 97 Civ. 5853 (RO), 1998 WL
226101, *2 (S.D.N.Y. May 5, 1998) (citing SEC v. Lorin, 869
F.Supp. 1117, 1122 (S.D.N.Y. 1994)).

It has been held that Section 2462 does not apply to
equitable remedies, which seek either to return opposing parties
to their status quo ante or to protect the public from harm. See
Jones II, 476 F. Supp. 2d at 380-81. Disgorgement is an
equitable remedy to which Section 2642 does not apply. See also
Lorin, 869 F.Supp. at 1122 (S.D.N.Y. 1994) ("I will not label
disgorgement a "fine, penalty, or forfeiture" in light of the
operation of disgorgement, which merely deprives one of
wrongfully obtained proceeds.").

27

Whether a permanent injunction constitutes a "penalty" under Section 2462 depends on the likelihood of recurrence. In Jones II, the court stated that "the Second Circuit demands that the Commission 'go beyond the mere facts of past violations and demonstrate a realistic likelihood of recurrence.'" Jones II, 476 F. Supp. 2d at 384 (citing S.E.C. v. Commonwealth Chem. Sec., Inc., 574 F.2d 90, 99 (2d Cir. 1978)). However, there is significant precedent in this circuit for granting injunctive relief of the kind sought here based upon allegations of past violations. SEC v. Manor Nursing Centers, Inc., 458 F.2d 1082, 1100 (2d Cir. 1972) ("[F]raudulent past conduct gives rise to an inference of a reasonable expectation of continued violations."); SEC v. Alexander, 160 F. Supp.2d 642, 655 (S.D.N.Y. 2001) (holding that the Commission properly pleaded claim for injunctive relief, as "[p]otential future violation of the securities laws can be inferred from past violations"); SEC v. Drescher, 99 Civ. 1419 (SAS), 1999 WL 946864, at *5 (S.D.N.Y. Oct. 19, 1999) ("In alleging Drescher violated the securities laws, the SEC has adequately stated a claim for injunctive relief.").

In determining whether there is a reasonable likelihood of future violations, a district court may also consider: (1) the

28

egregiousness of the violation; (2) the degree of scienter; (3) the isolated or repeated nature of the violations; and (4) the sincerity of defendant's assurances against future violations. SEC v. Haligiannis, 470 F. Supp. 2d 373, 384 (S.D.N.Y. 2007) (citing SEC v. Cavanagh, 155 F.3d 129, 135 (2d Cir.1998)).

Among the Commission's allegations that point toward recurrence are assertions that Power engaged in repeated fraudulent conduct and details Power's multiple violations and knowing misconduct over a period of several years. See Compl. ¶¶ 18-21, 23 (Power created the DCF sham transaction, designed it to look like two independent business transactions, and possessed accounting literature that indicated the accounting treatment was improper); Compl. ¶ 36 (Power proposed writing off over $70 million in alarm assets then in use); Compl. ¶ 38 (Power attempted to establish reserves at Raychem based on a worst-case basis); Compl. ¶ 39 (Power directed that Raychem's inventory be improperly valued); Compl. ¶ 40 (Power suggested consolidating Raychem and Tyco revenues a week before the merger to falsely increase Tyco's performance); Compl. ¶ 41 (Power directed the establishment of reserves at U.S. Surgical on a worst-case basis). The Complaint further alleges that unless Power is "restrained and enjoined by this Court, [he] will continue to engage in[] transactions, acts and courses of conduct" in

29

violation of the federal securities laws. Compl. ¶ 12. Such allegations are sufficient to allege a likelihood of recurrence.

Given that the Commission has adequately alleged a likelihood of recurrence and, therefore, a dispute remains as to whether the injunctive relief sought in this case would be equitable or punitive under Section 2462, the Court will not dismiss the claims for injunctive relief at this stage of the litigation.

## Conclusion

For the foregoing reasons, the motion of Defendant to dismiss is denied.

So ordered.

**New York, NY**
**November 27, 2007**

**ROBERT W. SWEET**
**U.S.D.J.**

30